Askold L. Fein, J.
Plaintiffs move for summary judgment in this action seeking a declaratory judgment that defendants are bound to take all steps necessary or appropriate to ensure the “ carrying out and construction” of a limited profit cooperative housing project and directing and mandating the various defendants to take such actions and execute such documents as are requisite for the purpose, including the issuance of a certificate directing the institution of condemnation proceedings, the adoption of Board of Estimate resolutions, the signing of loan agreements and the issuance of appropriate permits. Plaintiffs demand a, mandatory injunction directing specific performance of an alleged agreement entered into by plaintiffs and defendants pursuant to certain resolutions adopted by the New York City Board of Estimate (Board) on March 25, 1971. Defendants cross-move for summary judgment dismissing the complaint for failure to state a cause of action.
The motion and cross motion are considered together.
The essential facts are not in dispute. Plaintiffs (sponsors) seek to develop and construct a limited profit co-operative housing venture in Brooklyn, New York, known as Harbour Village, pursuant to article 2 of the Private Housing Finance Law.
From the pleadings and exhibits, it is evident that the method of obtaining city approval and assistance in financing housing ventures is a multifaceted operation, a veritable obstacle course, difficult for any potential sponsor to run untrammeled. The various interests to be accommodated create a series of complicated hurdles to be overcome before the objective can be attained.
Plaintiffs, at what may be assumed to be great expense, and for the purpose of providing needed housing for middle income families, duly submitted their initial proposals to the Housing and Development Administration (HDA). HDA granted its approval and transmitted the plans to the City Planning Commission. After holding public hearings, the commission approved the Harbour Village project and plans and recommended their adoption by the Board.
After public hearings the Board, on March 25, 1971, by resolutions duly adopted, approved the Harbour Village project and the plans, authorized HDA to enter into a loan contract with the plaintiffs providing for the financing of the project, *771 approved a real estate tax exemption and authorized acquisition of a portion of the site through condemnation with intent ultimately to convey the site to the sponsors. The acquisition resolution read, in part: “upon direction by the Mayor, the Corporation Counsel * * * is hereby authorized and directed to institute condemnation proceedings ” (Board resolution, cal. no. 17B; emphasis supplied).
In conformity with the resolution, paragraph 201 of the undated condemnation agreement executed by the sponsors and HDA reads, with respect to condemnation: “Upon request of Harbour Village and issue by the Mayor of the City, in his discretion, of a certificate directing acquisition.” (Emphasis supplied.)
Thus far the Mayor has failed to issue a condemnation certificate. In the absence of such certificate, condemnation cannot proceed. This has brought the venture to a virtual standstill. Condemnation., is obviously essential to going forward with the project. Community opposition to the venture, voiced by local civic groups and individuals, surfaced before and after the Board’s approval. A resolution to rescind the Board’s approval, subsequently introduced, was later withdrawn on legal grounds. The Board ultimately refused to adopt a resolution to demap and close off streets in the site area despite recommendations by both the planning commission and HDA that it do so. Part of the relief sought is a direction to the Board to take such action. By any objective standard, it is evident that the city has effectively thwarted the sponsors’ effort to build the proposed housing.
The failure of the Mayor to issue a condemnation certificate is the gravamen of the action, although the prayer for relief in the complaint and the relief sought on this motion request the court to mandate a variety of legislative, administrative and executive action, some of which is purley ministerial and much of which is discretionary.
Plaintiffs contend that the Board resolutions, and the agreement executed between the sponsors and HDA pursuant thereto, amount to an acceptance of their offer and constitute an agreement which this court must specifically enforce, albeit such enforcement would require a mandatory injunction directing executive, administrative and legislative action.
It must be held that there is no agreement and that the court has no power to compel the Mayor to act.
In essence, the threshold question is whether the issuance of a condemnation certificate by the Mayor is a purely ministerial *772 act or a discretionary act by the city’s chief executive and administrative officer which cannot be judicially enforced. Does the failure and apparent refusal of the Mayor to act preclude a finding that there is an enforceable agreement and constitute a bar against imposing any liability on the city?
The court has no pdwer to pass on the merits or desirability of the project, nor is that issue validly tendered. (Margulis v. Lindsay, 31 N Y 2d 167, 171.) Whatever the court’s views on the value or need for the project or its cost, it must be held that the court is not empowered to grant specific performance mandating and directing the issuance of a condemnation certificate by the Mayor, the execution of a loan contract by HD A, the adoption of a resolution demapping and closing certain streets by the Board, the issuance of the required permits, or the various other actions which would be necessary by a number of city agencies in order for the project to be carried out and constructed.
The Board of Estimate is essentially a legislative body. Under the City Charter and the Administrative Code, the Mayor is a member of the Board. As such, he acts as a member of a legislative body. However, he is pre-eminently the city’s chief executive and administrative officer. In this capacity, he executes the laws and resolutions passed and adopted by the City Council and the Board and administers the city government. Inherent in his office is necessarily a vast discretion. The Board resolutions and the agreement did not mandate the Mayor to issue a certificate of condemnation. It is doubtful that they could lawfully do so. However, it is not necessary to determine whether the board could mandate such action since it is manifest the board did not attempt to do so.
The Private Housing Finance Law of the State of New York, under which this project is authorized, provides that the local legislative body, the Board of Estimate, (§ 2, >subd. 12) may authorize tax exemptions (§ 33) and proceedings to condemn (§ 501).
Subdivision 1 of section 501 provides, with respect to condemnation: “ The municipality may proceed under any provision of any general, special or local law applicable to the condemnation of real property for public improvements ”,
The powers of the Mayor are set forth in section 8 of the New York City Charter: ‘ ‘ General powers. — a. The mayor, subject to this charter, shall exercise all the powers vested in the city, except as otherwise provided by law.”
*773 Thus, it is apparent that the residual powers of city government are vested in the Mayor.
With respect to condemnation by the city, New York City Charter (§ 228, subd. a, Project Initiation) provides: “At any time during the fiscal year the mayor, before initiating any capital project * * * directing the acquisition or leasing of real property * * * shall cause a public hearing to be held by the board of estimate * * * and may after such hearing direct such acquisition * * * If such project requires the taking of real property, such direction shall constitute an authorisation \therefor, and the corporation counsel shall thereupon institute proceedings for such taking in the manner provided by law ”. (Emphasis supplied.)
The Administrative Code of the City of New York (§ B 15-8.0, Application to condemn; contents of petition) requires the petition to set forth: “ 1. The order of the mayor authorizing the proceeding.
It is manifest that the Board’s acquisition resolution was necessarily adopted in conformity with these provisions of the Private Housing Finance Law, the City Charter and the Administrative Code. It is patent that these statutes provide for the exercise of mayoralty discretion. It follows that the Board, in using the words “upon direction by the Mayor”, never intended the Mayor’s act to be merely ministerial.
As previously noted, paragraph 201 of the condemnation agreement conditions condemnation upon issue by the Mayor “ in his discretion of a certificate directing acquisition ”. This provision of the condemnation agreement, in conformity with law and the Board’s resolution, made the Mayor’s discretionary act a condition precedent to the coming into existence of a contract, if it be assumed, as argued by plaintiffs, that the actions to be taken by the city constituted an acceptance of an offer by the sponsors.
The statutory language and the provisions of the resolutions and the agreement preclude a finding that the Mayor’s action was to be or is a mere formality. Nor is there merit to the contention that the alleged actions of the Mayor in routinely issuing other condemnation certificates is proof such action is a mere formality and not an exercise of discretion.
No court can compel the Mayor to exercise his discretion in the manner sought by plaintiffs. The law has placed upon him the responsibility of carrying out the provisions of the charter and other provisions of the law. If he fails properly to exercise his discretion the remedies lie elsewhere. Mandamus *774 lies only where the act is purely ministerial (Matter of Walsh v. LaGuardia, 269 N. Y. 437).
Plaintiffs’ reliance on Kooleraire Serv. and Installation Corp. v. Board of Educ. of City of N. Y. (28 N Y 2d 101) is misplaced. The narrow question presented in that breach of contract action was whether the comptroller’s failure, on defendant’s request, to follow a mandatory duty to certify the existence of funds necessary to pay expenses of the contract, was a valid excuse for defendant’s nonperformance. The contract provided, in accordance with the Administrative Code, that the agreement should not be binding “ unless the comptroller shall endorse hereon his certificate that there remains unexpended and unapplied * * * a balance * * * sufficient to pay ”. (Kooleraire, supra, p. 105; emphasis added.) It was undisputed that the funds were available and that the refusal of the Comptroller so to certify was for another purpose, at the request of the defendant. The court ruled that the contract provision controlled, not the statute, and that the parties could not have reasonably intended more than that the comptroller’s certification was needed only to establish the existence of the funds. In this respect, the comptroller’s duty was mandatory. He had no vqto power. This is far different from a decision whether to exercise the power of eminent domain.
The holding in Matter of Armere Holding Corp. v. Bell (44 A D 2d 578), cited by plaintiffs, is equally inapposite. In Armere, the court, in an article 78 proceeding, granted the sponsor’s application for a review of the withdrawal of his designation as sponsor only to the extent of remanding the proceedings for findings of fact and a statement of reasons for the determination that the sponsor’s performance was unsatisfactory. The question was whether there was compliance with the agency’s rules and regulations.
Plaintiffs’ reliance on International Firearms Co. v. Kingston Trust Co. (6 N Y 2d 406), is similarly misplaced. In that and other cases relied on by plaintiffs the courts applied the general rule that a party to a contract who has himself occasioned its nonperformance cannot plead such nonperformance as a defense. This has nothing to do with compelling the Mayor to exercise his discretion and directing him to exercise it by issuing a certificate.
Nor is this a case of an official agency invoking its omission to do an act which it had the power to do, in the exercise of the authority it purported to assume, to the detriment of innocent parties dealing with it in good faith. (See Van Dolsen v. Board *775 of Educ. of City of N. Y. 162 N. Y. 446, relied on by plaintiffs). Van Dolsen is clearly distinguishable. There the defendant Board attempted to avoid contract liability after performance was completed by the plaintiffs. The fact that funds for payment of the plaintiff were not available was known to the Board but unknown to the plaintiffs. There was a contract and there was performance. Here there is neither, but merely action by the Board in passing resolutions and authorizations. Albeit the Mayor is a Board member, discretionary action by him cannot be compelled. (Matter of Walsh v. LaGuardia, 269 N. Y. 437, supra.)
The relief sought would require the court to direct a congeries of discretionary administrative and legislative actions by a variety of city agencies from the Mayor down, including the Board of Estimate, which the court is without power to mandate and enforce.
Thus, the Board of Estimate’s denial of plaintiffs’ application to demap and close streets on the site is not subject to judicial review. (Matter of Asness v. City of New York, 5 Misc 2d 779, affd. 4 A D 2d 677.) Such action is legislative in character, not for judicial determination. These actions of the Board of Estimate and the Mayor are legislative and governmental functions, political in nature, not subject to judicial review or compulsion. (Kaskel v. Impellitteri, 306 N. Y. 73; Matter of City of New York [Ely Ave.], 217 N. Y. 45.)
Matter of Golden v. Planning Bd. of Town of Ramapo (30 N Y 2d 359), relied on by plaintiffs is not to the contrary. It deals merely with the question of the validity of land use limitations as an exclusionary device and the burden imposed on individual property owners. Equally irrelevant is Matter of Lefrak Forest Hills Corp. v. Galvin (40 A D 2d 211, affd. 31 N Y 2d 974) cited by plaintiffs, which held only that where a zoning variation had been granted and extended for several years and the owner had proceeded with the work in reliance thereon, vested rights had been acquired by such actual work based on the prior extensions.
Nor does the Board of Estimate’s refusal to issue a Planned Unit Development permit fall within the strictures of Matter of North Shore Steak House v. Board of Apps. of Inc. Vil. of Thomaston (30 N Y 2d 238), relied on by plaintiffs. That case held only that the refusal to grant a special permit for 20 parking spaces was arbitrary. This has nothing to do with the permits requisite for a vast housing project.
*776 It is bootless for plaintiffs to argue that the allegations in their papers, that the former Mayor “ acted arbitrarily, capriciously and without any viable reason or motive ” amounts to a showing that there was an “ abuse of discretion ’ \ Even assuming that the action of the Mayor was of a character subject to judicial review, the bald assertion of “ abuse ” does not warrant judicial inquiry or the substitution of judicial judgment for that of the Mayor as the city’s chief executive. (Margulis v. Lindsay, 31 N Y 2d 167, supra; Kaskel v. Impellitteri, 306 N. Y. 73, supra; Matter of Modugno v. Baumgartner, 11 Misc 2d 1022.)
Nor is Matter of American Asphalt Distrs. v. County of Otsego (40 A D 2d 571), relied on by plaintiffs, to the contrary, holding only that the rejection of the lowest bidder for reasons having nothing to do with the bid or the bidder’s ability to perform was arbitrary. No discretion was involved. Nor was the action legislative or governmental in character.
Equally without support in the record is the véry foundation of plaintiffs’ claim, their assertion that there is a contract between the sponsors and the city. This contention is based on the premise that the sponsors’ proposals to the city amounted to an offer and that the Board’s resolutions and the signing of the condemnation agreement amounted to an acceptance, constituting a contract. This completely overlooks the fact that condemnation was conditioned on the Mayor’s exercise of discretion directing it, that tax exemption depended on a mortgage debt, subject to a loan agreement to be executed after acquisition of title by the sponsors which would enable the sponsors to mortgage the site to the city. All of these steps depend on condemnation. Only after all were completed and the appropriate documents executed could the existence of a contract be found.
The holding in Village of Lake George v. Town of Caldwell (3 A D 2d 550, 553, affd. 5 N Y 2d 727), that “ a contract in the case óf a municipal corporation is evinced through the adoption of a resolution by the governing body of the municipal corporation” and is subject to specific performance, relied on by plaintiffs, is not to the contrary. In that case the resolutions adopted by the governing bodies of the village and town provided for the sale of a specific piece of property at a specific price, subject to a petition for a referendum. The issue was whether the absence of the referendum could be relied on as a basis for nonperformance. There was a complete contract, said the court involving a simple sale of a piece of land. Similar is Lowe v. City of New York (240 App. Div. 484), relied on *777 by plaintiffs, where the Comptroller had signed the contract for sale pursuant to Board direction. Nothing remained to be done except to transfer title, a far cry from the various discretionary acts here involved before a contract could be said to exist. The very prayer for relief evidences the nonexistence of a contract.
The court is not unmindful of the pressing need for housing. Nor is it unaware of the plaintiffs’ great expenditure of time and money and of the failure of their high hopes because of the former Mayor’s action. But this is neither a basis on which to find a contract nor a foundation for the exercise of judicial power. The court is neither the Legislature nor the Executive and cannot substitute its judgment for that of those branches of government in the exercise of governmental power.
The court finds that, by the adoption of the resolutions by the Board of Estimate (Cal. No. 17 A and Cal. No. 17B, March 25, 1971), defendants did not become and are not bound by contract or otherwise to take such steps as might be necessary or appropriate to insure the carrying out and construction of the Harbour Village limited profit housing project in the Paerdegat Basin section of Brooklyn.
Accordingly plaintiffs’ motion for summary judgment is denied and defendants’ cross motion to dismiss the complaint is granted.