GOODSTEIN CONSTRUCTION CORP., DIC-UNDERHILL INDUSTRIES AND MILSTEIN PROPERTIES, a Joint Venture, Appellant, v CITY OF NEW YORK, Defendant.

First Department, July 11, 1991

## APPEARANCES OF COUNSEL

*Charles G. Moerdler* of counsel *(Laurence Greenwald, Elizabeth A. Mullins* and *Diane Dresdale* with him on the brief; *Stroock & Stroock & Lavan,* attorneys), for appellant.

*Barry P. Schwartz* of counsel *(Fay Leoussis* with him on the brief; *Victor A. Kovner, Corporation Counsel,* attorney), for respondent.

## OPINION OF THE COURT

SMITH, J.

This appeal represents the third time that these parties have appeared before this court concerning the same controversy. *(See, Goodstein Constr. Corp. v City of New York,* 111 AD2d 49 [1985], *affd* 67 NY2d 990 [1986] *[Goodstein I];*[1] *Matter of Goodstein Constr. Corp. v Gliedman,* 117 AD2d 170 [1986], *affd* 69 NY2d 930 [1987] *[Goodstein II].)*[2]

The primary issues before the court on this appeal are whether the IAS court properly determined that there are no triable issues of material fact as to the plaintiff's claim for lost future profits and properly concluded that defendant is entitled to judgment, as a matter of law, as to those claims. We hold that summary judgment should not have been granted as to the claims for lost future profits.

While this appeal by plaintiff is limited to the issue of lost future profits, it is noted that the defendant City of New

---

1. In *Goodstein I,* the City of New York's motion pursuant to CPLR 3211 (a) (7) seeking dismissal of the first and second causes of action was denied.
2. In *Goodstein II,* plaintiff's CPLR article 78 petition was dismissed.

York (City) moved for summary judgment dismissing the entire complaint. The motion court refused to dismiss the entire complaint and denied the motion "solely to the extent that the complaint seeks the recovery of plaintiff's out of pocket expenditures incurred in connection with the designation agreements." The City did not appeal from the decision and states it failed to appeal through inadvertence. It has argued on this appeal that the entire complaint should be dismissed. We conclude that the motion court properly refused to dismiss the entire complaint.

The pertinent facts are as follows. This is an action to recover damages resulting from the City's alleged breach of designation agreements dated June 2, 1982 for the development of sites 5B and 5C within the Washington Street Urban Renewal Area. Pursuant to those agreements, the plaintiff was designated "to exclusively negotiate the terms and conditions of a land disposition agreement ("LDA") with HPD" to develop site 5B as a "commercial office building" and site 5C "primarily for multi-family residential use." The LDA, which would contain the "terms, covenants and conditions relative to the sale and development of the site," was subject to various legal requirements, including final approval by the Board of Estimate (BOE), which HPD was responsible for obtaining with plaintiff's cooperation. The agreements set forth the purchase price for sites 5B and 5C, $14,358,960 and $13,679,800, respectively, and imposed several immediate financial obligations upon the plaintiff such as (1) a $100,000 letter of credit for each site to assure that plaintiff diligently proceeded with negotiations; (2) development, at plaintiff's "sole risk, cost and expense, [of] building designs, marketing concepts, massing studies and financial projections" (site 5B); (3) submission of "progress drawings including sketches of typical floors, lobby, elevations, plaza and landscaping layouts" (site 5B); (4) the sole obligation to bear the cost and expense of cooperating with HPD in meeting the legal requirements; and (5) maintenance of Washington Park Market for public use and access.

By letter dated November 29, 1983, HPD dedesignated plaintiff, stating as the basis that "the City has decided it is in the best interest of the City to reserve the Washington Market Urban Renewal Sites 1, 5B and 5C for commercial development by back office users, many of whom wish to construct their own buildings." Plaintiff contends that this constituted a breach because it had fully performed under the agreement.

Moreover, plaintiff alleges that the City acted in bad faith because prior to the dedesignation then Deputy Mayor Kenneth Lipper with full knowledge of the June 2, 1982 agreements (1) directed HPD to cease actions to fulfill the legal requirements pertaining to the LDAs, i.e., certification of the plans by the Department of City Planning and BOE approval; (2) negotiated with Merrill Lynch & Company (Merrill Lynch) for the sale and development of the sites to which plaintiff had exclusive rights; and (3) thwarted plaintiff's negotiations with Shearson/American Express, Inc. (Shearson) by reversing the decision to grant tax abatements for site 5B and then granting the same tax abatements to Shearson in the City's direct sale of different sites to Shearson.

Plaintiff unsuccessfully challenged the dedesignation in an administrative hearing. A CPLR article 78 proceeding was then brought to vacate and annul the determination on the grounds that HPD's action was arbitrary and capricious. That petition was dismissed because plaintiff's breach of contract/bad-faith allegation did not "provide a clear legal right to article 78 relief." *(Matter of Goodstein Constr. Corp. v Gliedman,* 69 NY2d 930, 931 [1987], *supra.)*

Plaintiff commenced this action on May 4, 1984 after filing a notice of claim. Plaintiff is seeking $800 million in damages, all of which apparently consists of lost future profits except for $1 million in expenditures. The first cause of action seeks $500 million in damages for plaintiff's expenditures pursuant to the designation agreements and the loss of the sites. It is alleged that the City breached the designation agreements and obligations of good faith and cooperation implicit therein by failing to cooperate, failing to exercise diligence or good faith in fulfilling the terms of the agreements, frustrating plaintiff's performance under the agreement, and dedesignating plaintiff as the developer of the sites.

The second cause of action seeks $100 million in damages for sums expended to develop site 5B and to negotiate with Shearson, as well as the amount attributable to the loss of the Shearson transaction. Herein plaintiff alleges a breach based upon the City's reversal of its decision to grant a tax abatement for site 5B, which frustrated plaintiff's negotiations with Shearson, and, further, upon the City's subsequent direct sale of two different sites to Shearson which included tax abatements.

The third cause of action seeks $100 million in damages for

the City's alleged tortious interference with plaintiff's precontractual relations with Shearson.

The fourth cause of action seeks $100 million in damages based upon the City's negotiation with Merrill Lynch and others for the sale and development of the sites specified in the plaintiff's designation agreements. The City's actions allegedly breached the agreements and impeded plaintiff's ability to develop and market the sites.

The City moved to dismiss the first and second causes of action pursuant to CPLR 3211 (a) (7), failure to state a cause of action. The causes of action were held to be sufficiently pleaded *(Goodstein Constr. Corp. v City of New York,* 67 NY2d 990 [1986], *supra).* It was also ruled that "the designation agreements did impose the implied obligations of good faith, cooperation and fair dealing implicit in any contract * * * [for which] the law does afford a remedy." *(Goodstein Constr. Corp. v City of New York,* 111 AD2d 49, 52 [1985], *supra.)*

As stated above, presently before this court is that portion of the IAS court's most recent order granting the City's motion for summary judgment to the extent of dismissing all claims for lost future profits. The IAS court held that "[s]ince the viability of all damage claims (tort and contract) asserted in the complaint, other than for reimbursement for out-of-pocket expenses, is contingent on an LDA having been consummated between HPD and plaintiff and then approved by the necessary agencies (including the Board of Estimate), and since there is no way of knowing whether such agreement would be concluded and such approvals obtained, all causes of action are dismissed except to the extent they seek such reimbursement." (145 Misc 2d 870, 876-877.) The IAS court reasoned that "[o]n the claim of lost profits, even if plaintiff could establish that the City acted in bad faith in negotiating with and subsequently de-designating plaintiff, the claim would be speculative and cannot be sustained because it can never be determined whether the Board of Estimate * * * would have approved an agreement even if one was successfully negotiated by plaintiff and HPD, and all other conditions had been satisfied" *(supra,* at 875).

Plaintiff assigns error to this IAS ruling and rationale on essentially two grounds. First, it is contended that the claim for lost profits is not speculative. The City was allegedly on notice of plaintiff's expectation of future profits because under the terms of the agreements: (1) plaintiff provided the City

with financial projections and profitability studies, (2) the City agreed to the tax-exempt mortgaging of the residential portion and was aware of the anticipated rents, (3) the City had agreed to a preconstruction tenancy, and (4) the plaintiff was permitted to purchase the sites through a favorable purchase-money mortgage. It is further alleged that the City was cognizant of the potential profits from dealing with Shearson and Merrill Lynch because it embarked on those negotiations.

Second, the claim for lost profits is alleged not to be contingent on BOE approval because the failure to obtain that approval was directly caused by the bad-faith breaches of the designation agreements. It is further contended that it is at least arguable that BOE approval would have been granted in the absence of the City's misconduct.

The City responds that the claim for lost profits is too speculative, as a matter of law, and that the parties never contemplated that the City would assume liability for lost future profits. The speculative nature of plaintiff's claim is allegedly evidenced by the uncertainty of BOE approval for the LDAs, of obtaining the tax abatements, and of completing the project on time and on budget.

■ We conclude that it was error for the motion court to resolve the issue of future profits on a motion for summary judgment. Whether plaintiff can in fact establish lost profits should be determined at a trial. In *Kenford Co. v County of Erie* (67 NY2d 257 [1986]) the Court of Appeals noted that, in order to establish lost future profits, a plaintiff must show (1) that the particular damages at issue were in the contemplation of the parties when the contract was made, (2) that such damages were caused by the breach of the contract, and (3) that the loss was capable of proof with reasonable certainty.

In *Kenford Co. v County of Erie (supra)* a breach of contract action in which summary judgment was granted against the defendant as to liability, a jury verdict awarding the plaintiff lost future profits was set aside because the plaintiff's proof was legally insufficient. Plaintiff sought recovery of lost prospective profits from its contemplated 20-year operation of a domed stadium which was to have been constructed by the defendant. Kenford Company, Dome Stadium, Inc. (DSI) and the County of Erie contracted to construct and operate a domed stadium near Buffalo, New York. The county was to begin construction within 12 months of the contract date and a mutually acceptable 40-year lease between the county and

DSI was to be negotiated within three months of receipt by the county of preliminary plans, drawings and cost estimates. If a lease could not be agreed upon, a separate 20-year management agreement for the facility from the date of completion was to be executed between the county and DSI. The lease negotiations were unsuccessful and construction of the stadium never commenced. Subsequently, the contract was deemed breached. At the trial on damages, plaintiff presented extensive expert proof based upon assumptions, such as that the facility would be completed, available for use and successfully operated for 20 years by DSI, to establish projections of profitability over the life of the contract. In assessing the sufficiency of this proof, the Court of Appeals stated that "Loss of future profits as damages for breach of contract have been permitted in New York under long-established and precise rules of law. First, it must be demonstrated with certainty that such damages have been caused by the breach and, second, the alleged loss must be capable of proof with reasonable certainty. In other words, the damages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes *(Wakeman v Wheeler & Wilson Mfg. Co.,* 101 NY 205). In addition, there must be a showing that the particular damages were fairly within the contemplation of the parties to the contract at the time it was made *(Witherbee v Meyer,* 155 NY 446)." *(Supra,* 67 NY2d, at 261.)

The *Kenford* court concluded (1) that the parties had not contemplated liability for lost profits over the length of the contract and (2) that the expert proof as to the success of this proposed professional sports facility lacked reasonable certainty *(supra,* 67 NY2d, at 263 [1986]). Moreover, the court specifically adhered to the principles set forth in *Cramer v Grand Rapids Show Case Co.* (223 NY 63 [1918]) including the fact that damages must be established with reasonable certainty *(see also, Wakeman v Wheeler & Wilson Mfg. Co.,* 101 NY 205, 212 [1886]) and rejected the "rational basis" test enunciated in *Perma Research & Dev. v Singer Co.* (542 F2d 111 [1976], *cert denied* 429 US 987 [1976]).

In *Cramer v Grand Rapids Show Case Co.* (223 NY 63 [1918], *supra),* plaintiff sought recovery of lost profits due to the defendant's failure to supply certain goods, thereby delaying the opening of plaintiff's new business. At trial, evidence of sales and profits in the year following the opening of the

business was erroneously allowed as the basis for damages. The Court of Appeals stated that this was a new business, lacking any assurance of success and any history of capital investment, operating expenses and income from which lost profits could be established with reasonable certainty *(supra,* 223 NY, at 68). This was distinguished from an established business which suffered an interruption because of the contract breach. The court concluded that the measure of damages should be those profits lost during the year in which plaintiff was prevented from operating his business.

In *Perma Research & Dev. v Singer Co.* (542 F2d 111 [1976], *cert denied* 429 US 987 [1976], *supra),* after a bench trial, damages were awarded to the plaintiff for breach of a licensing agreement. The District Court found that Singer Co. had breached its contractual obligation "to use its best efforts to perfect, manufacture, and market an automotive anti-skid device" that was patented by the plaintiff *(supra,* 542 F2d, at 113). The defendant therein unsuccessfully argued that any damage award would be speculative and based upon the sales of a device which had never been successfully sold *(supra,* 542 F2d, at 114). The court stated that plaintiff was entitled to the reasonable damages flowing from the breach of contract. It was concluded that there was a reasonable basis for the damages awarded, as there was certainty that damages were attributable to the breach, and only uncertainty as to the amount *(supra,* 542 F2d, at 116).

It must also be noted that the decisions in *Kenford Co. v County of Erie (supra), Cramer v Grand Rapids Show Case Co. (supra),* and *Perma Research & Dev. v Singer Co. (supra)* were based upon evidence produced at trial. In the case at bar, there has been extensive discovery which makes it clear that there are issues of fact to be resolved with respect to the intention of the parties as to lost profits, the damages attributable to a breach and the reasonable certainty of the proof.

In this action, it is not disputed that Deputy Mayor Lipper directed HPD to delay the plaintiff's application and that plaintiff was ultimately dedesignated, without a finding of noncompliance against the plaintiff and prior to presentation of the LDA to the BOE. The record supports plaintiff's contention that it was ready, willing and able to perform in the absence of the City's breach. *(See, DeForest Radio Tel. & Tel. Co. v Triangle Radio Supply Co.,* 243 NY 283, 293 [1926].) If the City's actions constituted a bad-faith breach of the designation agreements, which is clearly at issue in this case, then

the City may be held liable for any damages, including lost future profits, that the plaintiff can properly establish.

The designation agreements implicitly indicate that the plaintiff reasonably anticipated and the City must have believed, that the agreements were entered into by the plaintiff for profit-making purposes. While it is true that the designation agreements do not specifically state that the City would be liable for lost profits, it is an issue of fact whether such damages were fairly within the contemplation of the parties herein.

■ As to the claim of the defendant City that it is entitled to a dismissal of the entire complaint, we conclude that the motion court properly rejected this claim. The dedesignation of plaintiff occurred on November 29, 1983. The City argues that there is no showing that it negotiated with anyone prior to the end of the exclusivity periods of January 17 and March 8, 1983 for sites 5C and 5B, respectively.

We agree with the motion court that the affidavits in opposition to the motion raise triable issues as to whether the City breached its obligations by contacts with Shearson, Merrill Lynch and others prior to the termination of the designation agreements. It is noted that discovery is incomplete, including depositions of former Mayor Edward Koch, former Deputy Mayor Kenneth Lipper, and real estate developer George Klein. All of these persons may have relevant information as to the allegations of this lawsuit and, at this juncture, without their testimony, summary judgment dismissing the complaint is inappropriate.

Accordingly, the motion for summary judgment as to the claim for loss of future profits should have been denied. In addition, for the reasons set forth above, the IAS court properly denied the motion for summary judgment with respect to the claim for reimbursement.

Order of the Supreme Court, New York County (Edward H. Lehner, J.), entered on November 6, 1989, which, *inter alia,* granted defendant's motion for summary judgment dismissing all causes of action seeking recovery of lost profits, unanimously reversed, upon the law and facts, to the extent appealed from, and those causes reinstated, without costs.

MILONAS, J. P., WALLACH, ASCH and KASSAL, JJ., concur.

Order, Supreme Court, New York County, entered on November 6, 1989, unanimously reversed, upon the law and facts, to the extent appealed from, without costs, and the causes of action seeking recovery of lost profits reinstated.