OPINION OF THE COURT
Hancock, Jr., J.
This action for damages against the City of New York arises from the termination of plaintiffs exclusive right to negotiate the terms and conditions of a contemplated land disposition agreement (LDA) for two sites in the Washington Street Urban Renewal Area. In a prior appeal, we affirmed the denial of the City’s motion to dismiss the complaint as insufficient on its face under CPLR 3211 (a) (7) (see, Goodstein Constr. Corp. v City of New York, 67 NY2d 990 [Goodstein I]). In this appeal by the City from the Appellate Division’s denial of its motion for summary judgment, we address a different legal issue: whether an action based on the City’s abrogation of plaintiffs exclusive right to negotiate the LDA can be the basis for recovery of damages for loss of anticipated profits. For reasons which follow, we conclude that plaintiff has no claim for such damages and that, accordingly, there should be a reversal.
Facts and Procedural History
Plaintiff, a joint venture engaged in construction and real estate projects, and defendant City of New York entered into two letter agreements, each dated June 2, 1982, for the development of two separate sites, 5B and 5C, within the Washington Street Urban Renewal Area. Each June 2 letter referred to a prior letter — dated January 29, 1982 for site 5B and February 1, 1982 for site 5C — from the Department of *369 Housing Preservation and Development (HPD) notifying plaintiff of its selection as exclusive negotiator for the respective site. By the terms of the June 2 letter agreements, plaintiff was designated "to exclusively negotiate the terms and conditions of a land disposition agreement ('LDA’)” with the HPD. Site 5B, to be purchased for $14,358,967, was to be developed for commercial use and site 5C, bearing a purchase price of $13,679,800, developed for multifamily residential use. Any binding obligation on the City under the LDA, which would contain the "terms, covenants, and conditions relative to the sale and development of the site”, was to be contingent upon the fulfillment of various legal requirements, including approval by the affected Community Board and the City Planning Commission under the Uniform Land Use Review Procedure mandated by section 197-c of the 1975 New York City Charter (ULURP), and finally by the City’s then-existing Board of Estimate.
The letter agreements imposed various obligations on plaintiff during the period of negotiation including: furnishing a $100,000 letter of credit for each site to assure diligent prosecution of the negotiations; developing at its "sole risk, cost and expense” building designs, marketing concepts and financial projections; submitting progress drawings; and bearing the costs of cooperating in meeting the legal requirements necessary for final approval by the Board of Estimate and execution by the City. The HPD, for its part, agreed to complete expeditiously all of its obligations incident to the ULURP precertification process and other legal requirements and to request the Board of Estimate "to calendar” for its consideration any successfully negotiated LDA. Each letter agreement contained a provision giving plaintiff the option to cancel and receive the return of its letter of credit in the event that, upon the expiration of a specified period, the Board of Estimate had not approved the LDA. The letters of January 29, 1982 and February 1, 1982, referred to and incorporated in the June 2, 1982 letter agreements, provided that "the City retained] the right to terminate negotiations at any time” in which case the City could "negotiate with any other applicant or non-applicant”, just as it could if it "decided not to extend the negotiation period”.
By letter dated November 29, 1983, the City notified plaintiff that it had been "dedesignated” as exclusive negotiator for the two sites, stating as the reason that it had decided it was in the best interests of the City to reserve the two sites for *370 commercial development by back office users, many of whom wished to construct their own buildings. No LDA was ever concluded. On May 4, 1984, plaintiff commenced this action containing four causes of action and seeking $800 million in damages, all but $1 million of which represents loss of anticipated profits. In its first cause of action, plaintiff alleges that the City breached the letter agreements in failing to cooperate with plaintiff, failing to exercise good faith in carrying out its obligations under the agreements, and purporting to terminate plaintiffs exclusive negotiation rights by sending the "dedesignation” letter of November 29, 1983. In the second cause of action, also for breach of the letter agreements and of the City’s obligation to act in good faith thereunder, plaintiff alleges that the City thwarted plaintiffs ongoing negotiations with Shearson/American Express, Inc. with respect to site 5B by, among other things, reversing its prior decision to grant a tax abatement for that site. The third cause of action seeks damages for the City’s alleged tortious interference with plaintiffs precontractual relations with Shearson. In its fourth cause of action, plaintiff alleges that the City breached the letter agreements by dealing with Merrill Lynch and Company in connection with sites 5B and 5C, the same sites about which plaintiff was conducting negotiations with the City.
The City moved to dismiss the first and second causes of action for facial insufficiency (CPLR 3211 [a] [7]). The IAS Court denied the motion and the Appellate Division affirmed unanimously, noting that "the [letter] agreements did impose the implied obligations of good faith, cooperation and fair dealing implicit in any contract * * * [for which] the law does afford a remedy” (Goodstein Constr. Corp. v City of New York, 111 AD2d 49, 52 [emphasis added]). Our Court affirmed with two members dissenting (Goodstein Constr. Corp. v City of New York, 67 NY2d 990, 991, supra).[1] In concluding that the causes of action were sufficiently pleaded, our Court emphasized that the complaint alleged that defendant had acted in violation of its good-faith contractual obligation to cooperate. That the City could have refused to continue negotiations and that only *371 the Board of Estimate could approve the LDA, we held, were "not dispositive on a motion addressed to the face of the pleadings” (id., at 992).
The City thereafter moved for summary judgment dismissing the complaint in its entirety. The IAS Court granted it partial summary judgment, dismissing the four causes of action only insofar as they sought loss of anticipated profits. The IAS Court concluded that although plaintiff might be entitled to recover for its out-of-pocket expenses, it could not recover for loss of future profits, inasmuch as "the viability of all damage claims (tort and contract) asserted in the complaint, other than for reimbursement for out-of-pocket expenses, is contingent on an LDA having been consummated between HPD and plaintiff and then approved by the necessary agencies (including the Board of Estimate), and * * * there is no way of knowing whether such agreement would be concluded and such approvals obtained” (Goodstein Constr. Corp. v City of New York, 145 Mise 2d 870, 876-877).
On plaintiff’s appeal, the Appellate Division reversed unanimously and denied defendant’s summary judgment motion (see, Goodstein Constr. Corp. v City of New York, 169 AD2d 229). It reasoned that "the [letter] agreements implicitly indicate that the plaintiff reasonably anticipated and the City must have believed, that the agreements were entered into by the plaintiff for profit-making purposes” and that "it is an issue of fact whether such damages were fairly within the contemplation of the parties herein” (id., at 237).
On the City’s motion, the Appellate Division granted leave to appeal to this Court and certified the following question of law: "Was the order of this Court, which reversed the order of the Supreme Court, properly made?” We answer the question in the negative.
Discussion
It is established as law of the case that plaintiff’s causes of action are sufficiently pleaded (see, Goodstein Constr. Corp. v City of New York, 67 NY2d 990, supra) and that, if successful at trial, plaintiff may be entitled to recover reliance damages for the sums it has expended.[2] The question now is whether, *372 under these causes of action, plaintiff may also recover — in addition to out-of-pocket expenses — damages for the lost profits it assertedly would have realized if the proposed developments for sites 5B and 5C had taken place. Any such damages would have to arise from the City’s alleged failure to act in good faith in cooperating with plaintiff under the exclusive negotiation letters to the end that the terms and conditions of the anticipated LDA might be agreed upon.
An analysis of plaintiff’s claim for loss of profits must start with an examination of the precise nature of the obligation on which the claim is based. That obligation, it must be emphasized, arises not from the actual LDA, but from a preliminary agreement to negotiate an LDA. The distinction is critical. Plaintiff does not claim that the City breached any substantive obligation to be performed by it under the prospective LDA and, indeed, could not make such claim inasmuch as no LDA was ever concluded. Moreover, the City could not, in any event, have been contractually bound by any LDA concluded with plaintiff because both the exclusive negotiating agreements and the then existing law expressly conditioned the City’s contractual obligation on final approval by the Board of Estimate.[3]
That the Board of Estimate was required to approve the LDA in order for it to be a binding contract was by no means a prerequisite calling for action that was merely perfunctory or ministerial. On the contrary, the required approval contemplated a discretionary legislative action that was political in nature and not subject to judicial review (see, Kaskel v Impellitteri, 306 NY 73; Matter of City of New York [Ely Ave.], 217 NY 45; Cicalo v New York City Hous. & Dev. Admin., 79 Misc 2d 769, 775, affd 51 AD2d 957 [affirmed unanimously for *373 reasons stated at Special Term by Fein, J.], lv denied 40 NY2d 803; Walentas v Lipper, 862 F2d 414 [2d Cir 1988]).[4] The precise question, then, is whether plaintiff, in addition to its claim for reliance damages, can have a valid claim for the loss of its expectancy based upon the City’s anticipated performance of the obligations it would have undertaken assuming that the negotiations had progressed to agreement and that an LDA had been finally approved by the Board of Estimate.
We conclude that both the law and logic preclude such a recovery. Contract damages are ordinarily intended to give the injured party the benefit of the bargain by awarding a sum of money that will, to the extent possible, put that party in as good a position as it would have been in had the contract been performed (see, Restatement [Second] of Contracts § 347, comment a; § 344). Here, the City’s sole obligation under the letters of January 29, February 1, and June 2, 1982 was to negotiate in good faith. The City was neither bound to agree to an LDA nor to continue the negotiating process. To allow the profits that plaintiff might have made under the prospective LDA as the damages for breach of the exclusive negotiating agreements would be basing damages not on the exclusive negotiating agreements but on the prospective terms of a nonexistent contract which the City was fully at liberty to reject. It would, in effect, be transforming an agreement to negotiate for a contract into the contract itself.
In dismissing plaintiff’s claims for loss of profits, the IAS Court properly noted that "a party’s 'alleged failure to bargain in good faith is not a but-for cause of [plaintiff’s] lost profits, since even with the best faith on both sides the deal might not have been closed [and] attributing [plaintiff’s] lost profits to [defendant’s] bad faith may be speculative at best’ ” (Goodstein Constr. Corp. v City of New York, 145 Misc 2d 870, 876, supra [quoting Arcadian Phosphates v Arcadian Corp., 884 F2d 69, 74, n 2 (2d Cir)]). As one commentator has put it, *374 an "award based on [the expectation interest] would give the injured party the 'benefit of the bargain’ that was not reached. But if no agreement was reached and * * * it cannot even be known what agreement would have been reached, there is no way to measure the lost expectation” (1 Farnsworth, Contracts § 3.26a, at 314 [emphasis added]; cf., Matter of Allen v Eberling, 24 AD2d 594 [unsuccessful bidder not entitled to lost profits based on bid that was not accepted]; Excavation Constr. v United States, 494 F2d 1289, 1290 [Ct Cl 1974] [damages for improperly rejected bid cannot exceed bid preparation costs]; Sardella Constr. Co. v Braintree Hous. Auth., 3 Mass App Ct 326, 329 NE2d 762 [1975] [recovery limited to bid preparation costs]).
There is a further reason for rejecting plaintiffs loss of profits damages claim even assuming hypothetically that the letter agreements could somehow provide the theoretical predicate for such damages. Under the accepted rule of Hadley v Baxendale (9 Exch 341, 156 Eng Rep 145 [1854]), it must be shown "that the particular damages were fairly within the contemplation of the parties to the contract at the time it was made” (Kenford Co. v County of Erie, 67 NY2d 257, 261). The letter agreements under which plaintiff makes its claim, it must be noted, were terminable by the City, and the LDA, had its terms ultimately been accepted by the HPD, was subject to various layers of governmental approval before it could be binding, including approval by the Board of Estimate. The City argues that under the rule of Hadley v Baxendale, loss of profits based on fulfillment of the terms of the contract being negotiated could not have been reasonably contemplated as damages for a breach of the agreement to negotiate those very contractual terms. We agree.
As the City points out, to allow plaintiff loss of anticipated profits of some $800 million, based on the hypothesized successful completion of the proposed improvements in sites 5B and 5C, would have the anomalous effect of holding the City responsible as guarantor, under a proposed LDA to which neither party had agreed, for the profits from projected improvements which plaintiff would never have to construct. Our decision in Kenford Co. v County of Erie (73 NY2d 312) is pertinent. There, this Court reversed plaintiffs recovery for lost profits based on the anticipated enhancement in the value *375 of land surrounding a domed stadium to be built under a contract which the County had cancelled. In dismissing plaintiffs lost profits claim as not within the reasonable contemplation of the parties under Hadley v Baxendale, the Court stated:
"To hold otherwise [and allow the claim] would lead to the irrational conclusion that the County, in addition to promising to build the domed stadium, provided a guarantee that if for any reason the stadium were not built, [the plaintiff] would still receive all the hoped for financial benefits from the peripheral lands it anticipated to receive upon the completion of the stadium. According to [plaintiffs] version of the facts, [plaintiff] was to realize all of its anticipated gains with or without the stadium. Clearly, such a result is illogical and without any basis whatsoever in the record” (Ken-ford Co. v County of Erie, 73 NY2d 312, 321, supra; see, Kenford Co. v County of Erie, 108 AD2d 132, 148-150).
Here — where the claims are founded only on an agreement to negotiate — awarding plaintiff lost profits based on the projected improvements would be even more "irrational” and "illogical and without any basis” (73 NY2d, at 321, supra) than in Kenford where the plaintiff could base its claim on a formal binding contract to construct the stadium. It can hardly be supposed that by subscribing to these exclusive negotiating agreements, the City officials envisioned that they were then exposing the City to liability of catastrophic proportions when the other party was assuming no risk whatsoever. Contrary to plaintiffs contention, the City’s knowledge of the details of plaintiffs plans and cost estimates does not suggest that the City was agreeing to underwrite the hypothetical profits from these plans on the assumption that the LDA would be finally approved and the plans completed (see, Ken-ford Co. v County of Erie, 73 NY2d 312, 319-320, supra [rejecting a similar argument]). It is simply not conceivable that the City officials could have contemplated that in entering into the exclusive negotiating agreements they were subjecting the City to such an unfair and one-sided allocation of the risks (see, Restatement [Second] of Contracts § 351 [3] [1979]; see, Kenford Co. v County of Erie, 73 NY2d, at 321, supra; Kenford Co. v County of Erie, 108 AD2d, at 149-150, supra).
*376 The order of the Appellate Division should be reversed, with costs, the order of Supreme Court reinstated and the certified question answered in the negative.
Acting Chief Judge Simons and Judges Kaye, Titone and Bellacosa concur; Judge Smith taking no part.
Order reversed, etc.

. Plaintiff also challenged the dedesignation in a CPLR article 78 proceeding brought to vacate and annul the determination on the grounds that the Department of Housing Preservation and Development’s action was arbitrary and capricious. We affirmed the dismissal of that petition on the ground that plaintiffs did not "provide a clear legal right to article 78 relief’ (Matter of Goodstein Constr. Corp. v Gliedman, 69 NY2d 930, 931 [Goodstein II], affg 117 AD2d 170).

. As noted (supra, at 371), the IAS Court denied the City’s motion for summary judgment dismissing the complaint to the extent that plaintiff sought recovery for reimbursement for out-of-pocket expenses. The City did *372 not appeal and the Appellate Division did not challenge plaintiff’s right to recover reliance damages. Nor does the City dispute in this Court that plaintiff, if successful, would be entitled to recover reliance damages for out-of-pocket expenses.

. Under General Municipal Law § 507 (2) (c) the sale of urban renewal property to a private entity, such as plaintiff, could be effected only upon the approval of the appropriate "governing body”. At all times in question here, the Board of Estimate was the "governing body” under the then prevailing definition in General Municipal Law § 502 (1) because the Board of Estimate was vested with "final authority respecting the use, development and improvement of city land” (1975 NY City Charter §67 [4]; see, Matter of Waybro Corp. v Board of Estimate, 67 NY2d 349, 355 [final approval authority in City’s ULURP process vested in the Board of Estimate under 1975 NY City Charter § 197-c (f)]).

. The Walentas court held that an exclusive New York City urban renewal negotiating agreement similar to those in question here conferred no property interest on the developer for the purpose of a claim under 42 USC § 1983. In dismissing the action, the court observed that "no binding contract could come into existence until the New York City Board of Estimate, in the context of the city’s Uniform Land Use Review Procedure, approved [the plaintiff] as the developer” and that plaintiff’s "selection as developer would have been a discretionary determination by a political body which, as the district court correctly stated, plaintiff 'had no right to expect.’ Walentas v. Lipper, 636 F.Supp. 331, 336 (S.D.N.Y. 1986)” (Walentas v Lipper, 862 F2d, at 419-420, supra).